Case 4:24-cv-01418   Document 40   Filed on 11/19/24 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PHYLLIS GILLON, § | |
|     Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:24-CV-01418 |
| § | |
| UCB INC., § | |
|     Defendant. § | |

# **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant UCB, Inc.'s Motion to Compel Arbitration and Dismiss Proceedings. (Dkt. 13). Having carefully reviewed the motion, the response, the reply,[1] and the applicable law, the Motion is **GRANTED IN PART.**

## I.    FACTUAL BACKGROUND

Plaintiff Phyllis Gillon ("Gillon") is suing her former employer Defendant UCB, Inc. ("UCB") for retaliation, race discrimination, sex discrimination, and age discrimination under state and federal anti-discrimination laws. (Dkt. 1). Gillon worked for UCB as a Regional Director for eight years prior to her allegedly retaliatory termination. (*Id.* at p. 3). The employment contract between Gillon and UCB ("Employment Agreement") contains a mandatory arbitration provision ("Arbitration

---

[1] Gillon moved for leave to file a sur-reply (Dkt. 27) to address an argument in UCB's reply in further support of its motion to compel arbitration (Dkt. 20). As Gillon did not attach her proposed sur-reply, the motion is **DENIED AS MOOT**. However, Gillon was able to fully address this issue with the Court through oral argument. *See* (Dkt. 39).

Agreement") requiring all employment-related claims to be resolved through arbitration. (Dkt. 13 at p. 1). While Gillon both signed the Employment Agreement and initialed the Arbitration Agreement, UCB failed to countersign either. (Dkt. 13-1). The Employment Agreement contains a choice-of-law provision, and the parties agree that the Arbitration Agreement is governed by the "laws of the State of Georgia." (*Id*. at p. 2); (Dkt. 20 at p. 3).

Despite the Arbitration Agreement, Gillon brought this action against UCB for employment-related claims. (Dkt. 1). UCB filed the pending motion to compel arbitration, arguing that the Arbitration Agreement is valid and enforceable under both Georgia Law and the Federal Arbitration Act. (Dkt. 13). Gillon responded in opposition, asserting that UCB's failure to sign either agreement renders the Arbitration Agreement invalid, and—even if the agreement were valid—such agreement is illusory. (Dkt. 20). The Court addresses these arguments below.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to mandatory arbitration provisions in most employment contracts and requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract. *See Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000) ("The FAA's primary goal is to place agreements to arbitrate on the same footing as other contracts." (quotation omitted)). Specifically, the FAA provides that: "A party aggrieved by the

alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Every circuit except the Fifth Circuit has endorsed the use of the Federal Rule of Civil Procedure 56 summary judgment standard to evaluate motions to compel arbitration under the FAA.[2] While the Fifth Circuit has not articulated the appropriate standard to apply to a motion to compel arbitration, the district courts within it have used the Rule 56 standard. *See, e.g., Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019). No party has proposed an alternative standard to apply, and the Court will evaluate the pending motion under the summary judgment standard.

In the context of a motion to compel arbitration, the Rule 56 standard requires the movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *Jackson*, 389 F. Supp. 3d at 445 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact for trial. *Jackson*, 389 F. Supp. 3d at 445 (citing *Hancock v. American Telephone and Telegraph Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)).

---

[2] The Third and Eighth Circuits also appear to endorse a standard based on Federal Rule of Civil Procedure 12(b)(6) in cases where arbitrability is apparent from the face of the pleadings. *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174–75 & n.7 (1st Cir. 2021) (collecting cases).

## III.   ANALYSIS

The Court finds that the Arbitration Agreement is valid and enforceable as to Gillon's claims for retaliation, race discrimination, sex discrimination, and age discrimination. The FAA applies here because the agreement at issue is a written employment contract that involves interstate commerce and does not fall into the exception for transportation workers. 9 U.S.C.S. § 2; *see Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001) ("Section 1 exempts from the FAA only contracts of employment of transportation workers."). Under Georgia state law, UCB and Gillon appropriately executed a binding agreement. Further, the Arbitration Agreement encompasses Gillon's pending claims and no external legal constraints exist as to the agreement. Accordingly, the Court finds that the Arbitration Agreement is enforceable and UCB's motion should be granted.

### A.   The Validity of the Agreement

The Court holds that UCB did not need to sign the Arbitration Agreement to be bound by its terms under Georgia law. Further, the Court finds that UCB's promise is not illusory because it did not retain the ability to unilaterally modify the Arbitration Agreement. As such, the Arbitration Agreement is valid.

The Supreme Court has recognized a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("[The FAA] is a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary."). Again, the FAA applies here because the Arbitration Agreement is in a written contract "evidencing a transaction involving commerce." 9 U.S.C.S. § 2; *see Circuit City*, 532 U.S. at 119. Under the FAA, ordinary principles of state law "governing the validity, revocability, and enforceability of contracts" determine whether there is a valid agreement to arbitrate. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Here, the parties agree that Georgia law governs. (Dkt. 13 at pp. 3 - 4); (Dkt. 20 at p. 3).

    *i.*    *The Signature*

Gillon argues that the Arbitration Agreement is unenforceable because it is not valid under Georgia law. (Dkt. 20 at p. 3). Specifically, Gillon argues that the Arbitration Agreement violates the Georgia Arbitration Code because it was not countersigned by UCB. (*Id.*). The Georgia Arbitration Code—which provides "the exclusive means by which agreements to arbitrate disputes can be enforced"—states that it does not apply to "any contract relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement." OCGA § 9-9-2(c)(9). However, this statute governs *enforceability* of the agreement, not *validity*—under the FAA, the validity of the contract at issue is governed by Georgia state contract law. *See Halliburton*, 921 F.3d at 530.

"Under Georgia law, the cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract." *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 118 (2013). However, Georgia law does not require that UCB sign the contract in order to indicate its intent to be bound. *See Comvest v. Corp. Sec. Grp.*, 234 Ga. App. 277, 280 (1998) ("Defendant, however, did not need to sign the contract in order to indicate assent to its terms."). Specifically, Georgia law "does not require that … contracts to arbitrate[] be signed in order to be valid." *Bruce v. PharmaCentra,* LLC, 2008 WL 1902090, at *4 (N.D. Ga. Apr. 25, 2008); *see also Comvest*, 234 Ga. App. at 280 (finding that a party could be bound to an unsigned arbitration agreement under Georgia law). "Even those Georgia contracts that fall under the Statute of Frauds and require a writing need only be signed by the party against whom enforcement is sought." *Bruce*, 2008 WL 1902090, at *4 (citing Ga. Code Ann. § 11-2-201).

Gillon signed both the Employment Agreement and the Arbitration Agreement. (Dkt. 13-1). The Arbitration Agreement states, in relevant part: "If a dispute arises out of or relates to this Agreement … and if said dispute cannot be settled through direct discussions, the parties agree to settle the dispute by binding arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association…" (Dkt. 13-1 at p. 3). The promise to arbitrate is mutual in the terms of the written agreement, and UCB's intent to be bound is further demonstrated by its continued

employment of Gillon. *See Bruce*, 2008 WL 1902090, at *5 (finding mutual obligations to arbitrate where the "agreement was in the nature of an offer for continued employment"). Under Georgia state contract law, this is sufficient to create a binding agreement between Gillon and UCB. The Court finds the employment agreement is valid under Georgia contract law.

    ii.    *Illusory Promise*

The Court holds that UCB's promise to arbitrate Gillon's claims is not illusory because, under the terms of the Employment Agreement, UCB may only modify the Arbitration Agreement with proper notice to Gillon. "To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." *Anderson v. Am. Gen. Ins.*, 688 Fed. Appx. 667, 669 (11th Cir. 2017) (quoting *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008)). "While mutual promises, such as a mutual promise to arbitrate, is sufficient consideration, 'where a party offers an illusory promise, a court will find inadequate consideration and deem the contract unenforceable.'" *Id*. (quoting *Lambert*, 544 F.3d at 1196).

Gillon argues that the Arbitration Agreement is illusory because UCB has preserved its right to change the terms and conditions of Plaintiff's employment relationship in the Employee Handbook—a wholly separate document from the Employment Agreement. (Dkt. 20 at p. 7). However, the Employment Agreement itself

states: "This Agreement constitutes the sole and entire agreement between UCB and Employee except as expressly indicated herein. … Except as provided herein, this Agreement can be modified *only by a written agreement duly executed by the parties hereto*." (Dkt. 13-1 at p. 4) (emphasis added).

Courts applying Georgia law have found that, where employers are able to modify a mandatory arbitration agreement only with proper notice, the promise to be bound is not illusory. *See Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1374 (11th Cir. 2005). Here, the Employment Agreement only allows modification of the terms of the agreement by "a written agreement duly executed by the parties." (Dkt. 13-1 at p. 4). In this way, UCB is bound to the terms of the Arbitration Agreement as signed by Gillon unless Gillon is given notice and agrees to any modification. The Court finds this is a non-illusory promise under Georgia law.

**B.     Enforceability**

The Court holds that the Arbitration Agreement is enforceable against Gillon. The FAA governs enforceability of the agreement—not the more stringent standards of the Georgia Arbitration Code. Under the FAA, the Arbitration Agreement is enforceable because is a valid agreement, the pending lawsuit falls within the scope of the agreement, and no external legal constraints prevent enforceability.

  *i.     Georgia Arbitration Code*

Gillon argues that, because the Georgia Arbitration Code requires signatures from all parties to create an enforceable arbitration agreement, the Arbitration Agreement is unenforceable. (Dkt. 20 at p. 3). The Court disagrees. The FAA is "pre-emptive of state laws hostile to arbitration," and the Court finds that it applies to the present agreement. *Circuit City*, 532 U.S. at 112; 9 U.S.C.S. § 2.

The Court finds that the Georgia Arbitration Code is hostile to arbitration because the requirements under that statute are more stringent than those under the FAA. Namely, the FAA does not require arbitration agreements to be signed by the parties. *See Soni v. Solera Holdings, L.L.C.*, 2022 U.S. App. LEXIS 12079, at *9 (5th Cir. May 4, 2022) ("The FAA does not expressly impose a signature requirement."); *Caley*, 428 F.3d at 1369 ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement."). The Georgia Arbitration Code's signature requirement makes it more difficult for parties to agree to arbitrate and therefore goes against the federal policy favoring arbitration. *See Mercury Constr. Corp.*, 460 U.S. at 24. As such, the FAA must pre-empt Georgia's Arbitration Code. *See Langfitt v. Jackson*, 284 Ga. App. 628, 644 S.E.2d 460, 465 (Ga. App. 2007) (holding that the FAA preempted Georgia's arbitration law so that initials were not required on the arbitration provision in the parties' contract); *see generally Anderson v. AIG Life and Retirement*, 199 F. Supp. 3d 1371, 1378 (S.D. Ga. 2016) ("As courts across the country, including Georgia, have recognized, the FAA preempts state law when the law undermines the FAA's objective of enforcing

arbitration agreements according to their terms"). Accordingly, the Georgia Arbitration Code does not govern the enforcement of the Arbitration Agreement.

    *ii.*    *The FAA*

The Court finds that the Arbitration Agreement is enforceable under the FAA. In adjudicating a motion to compel arbitration under the FAA, courts in the Fifth Circuit conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which the court does by evaluating: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. The second step is to determine "whether legal constraints external to the parties' agreement" foreclose the arbitration of the dispute. *Id.*

For the reasons explained above, the Court finds that a valid agreement to arbitrate exists between Gillon and UCB. The Court next looks to the scope of the agreement. Here, the Arbitration Agreement covers any dispute that "arises out of or relates to" the employment agreement and, among other things, privileges of employment. (Dkt. 13-1 at p. 3). Gillon does not dispute that her retaliation, race discrimination, sex discrimination, and age discrimination claims fall within the scope of the agreement. *See* (Dkt. 20); (Dkt. 27). Also, Gillon does not argue that any external legal constraints prevent enforceability, and the Court finds that no such constraints exist. Accordingly, Gillon's claims fall

within the scope of the Arbitration Agreement, and the Court finds that the agreement is enforceable under the FAA.

C.    **Stay Rather Than Dismissal**

UCB requests dismissal of this case, but the Court finds that precedent favors staying the action instead. (Dkt. 13). The U.S. Supreme Court recently held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024). As the Court has concluded that this action involves an arbitrable dispute, the Court is compelled to stay the proceeding rather than dismiss it.

IV.    **CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** UCB's Motion to Compel Arbitration and Dismiss Proceedings (Dkt. 13). All other pending motions are **DENIED** as moot. This action is **STAYED** and the Court **ORDERS** this case to arbitration pursuant to the terms of the parties' agreement. The parties are **ORDERED** to provide a status report every 90 days.

SIGNED at Houston, Texas on November 19, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE